Nancy Knox Bierman
204 Munford St.
Houston, TX 77008
(713) 836-9990
SBOT#24059177
libralawtexas@gmail.com
(Pro Hoc Vice)

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| LAURELLYN CIAVARDONE, | Case No.: 2:23-cv-315-JES-KCD |
| Plaintiff, | |
| vs. | PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS |
| RAYTHEON TECHNOLOGIES, LLC. | |
| Defendant | |

COMES NOW, Laurellyn Ciavardone, Plaintiff, and files this her Response to Respondent's Motion to Dismiss. In support, Mrs. Ciavardone offers the following:

## SUMMARY OF RESPONSE ARGUMENT

Since its passage, Title VII of the Civil Rights Act of 1964 has made it unlawful for covered employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion." 42 U. S. C. §2000e-2(a)(1) (1964 ed.). As originally enacted, Title VII did not spell out what it meant by discrimination "because of . . .

religion," The EEOC defined this as "to make reasonable accommodations to the religious needs of employees" whenever that would not work an "undue hardship on the conduct of the employer's business." 29 CFR § 1605.1 (1968). *Groff v. DeJoy, 2023 U.S. LEXIS 2790, *15-16.* Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assesses the reasonableness of a particular possible accommodation or accommodations. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013) Congress provided that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief….without undue hardship on the conduct of the employer's business." 42 U. S. C. §2000e(j) (1970 ed., Supp. II). *DeJoy* at 16.

## I.   DISCRIMINATION IN VIOLATION OF 42 U.S. CODE §§2000e–2(a)(1) 2(a)(2) HAS BEEN MET

Plaintiff asserts claims for discrimination on the basis of religion under Title VII. Plaintiff requested a religious exemption but was denied due to lack of religiosity and citation of specific doctrine . Her beliefs were ostracized, her natural immunity mocked, and her remote work status ignored. Defendant demonstrated discriminatory animus toward Plaintiff by terminating her employment and showing callous indifference toward her sincerely held religious beliefs. The federal mandate was stayed

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 2

by the time of her termination, and the absolute ridiculousness of requiring

a remote worker to be vaccinated in order to protect her fellow employees,

when she had none, is a stretch of even the most lively of imaginations.

### A. Harassment

Plaintiff did not assert a separate claim for hostile

work environment nor for disparate treatment.  Plaintiff did assert

harassment claims as they pertain to discrimination under Title VII.  *Cf.*

*Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004)* ("A

claim for religious discrimination under Title VII can be asserted under

several different theories, including disparate treatment and failure to

accommodate.").. Religious harassment in violation of Title VII occurs

when employees are: (1) required or coerced to abandon, alter, or adopt a

religious practice as a condition of employment; or (2) subjected to

unwelcome statements or conduct that is based on religion and is so

severe or pervasive that the individual being harassed reasonably finds the

work environment to be hostile or abusive, and there is a basis for holding

the agency liable. Liability attaches when a tangible employment action

results from said discrimination when it creates a hostile work

environment, and reasonable care has not been taken to prevent or correct

the behavior. Here, Plaintiff worked remotely as was at her home during

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 3

the time period in question. Obviously, the "work environment" itself was her own home, so there was no separation, quarantine, or prohibition from common areas that would have been the case had Plaintiff been an "on site" employee.

### B. Failure to Accommodate

Plaintiff does not assert a separate failure to accommodate. Rather she asserts under the umbrella of discrimination. Plaintiff worked from home and posed no danger to her fellow employees. Furthermore, by the time of her termination,

EO 14042 was challenged in federal court and on December 7, 2021, U.S. District Court Judge R. Stan Baker of the Southern District of Georgia issued a nationwide injunction against the enforcement of the vaccine mandate for federal contractors. 19. All Federal Contracting Officers received direction on December 8, 2021, to stop all modifications to Government contracts, including terminology for implementing Covid vaccine mandates.

In the 17 countries, there is no evidence in All-Cause Mortality (ACM) by time data of any beneficial effect of COVID-19 vaccines. There is no association in time between COVID-19 vaccination and any proportionate reduction in ACM. The opposite occurs. Nine of the 17 countries have no

detectable excess ACM in the period of approximately one year after a pandemic was declared on 11 March 2020 by the World Health Organization (WHO), until the vaccines are rolled out. Unprecedented peaks in ACM occur in the summer (January-February) of 2022 in the Southern Hemisphere, and in equatorial-latitude countries, which are synchronous with or immediately preceded by rapid COVID-19-vaccine-booster-dose rollouts (3rd or 4th doses). This phenomenon is present in every case with sufficient mortality data (15 countries). *COVID-19 vaccine-associated mortality in the Southern Hemisphere* Denis G. Rancourt,1, PhD ; Marine Baudin,2 PhD ; Joseph Hickey,1 PhD ; Jérémie Mercier,2 PhD.

Given the fact that vaccination did not stop transmission, Plaintiff worked from home and had no contact with fellow employees, the EO was stayed, and adverse reactions were known, there is no rational basis for not accommodating Plaintiff's request for a religious exemption to mandatory vaccination of an experimental vaccine, whose efficacy was unknown, whose adverse reactions were undocumented, whose manufacturer bore no tort liability, would be the definition of a failure to accommodate.

## II.   RETALIATION IN VIOLATION OF 42 U.S. Code § 200e-3 HAS BEEN MET

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 5

Plaintiff asserts claims for Retaliation under Title VII of the Civil Rights Act of 1964. Title VII prohibits an employer from discriminating against an employee on the basis of a protected trait including religion. See 42 U.S.C. § 2000e-2(a)(1); The statute prohibits an employer from retaliating against an employee because they have made a charge of discrimination or has opposed a discriminatory practice. See 42 U.S.C. § 2000e-3(a); In the Ninth Circuit, courts utilize a burden-shifting framework when reviewing these claims. *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1002 (9th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)*). To make a prima facie case of retaliation, a plaintiff must show that "(1) they engaged in a protected activity; (2) the employer subjected them to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000)*; see *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1176 (C.D. Cal. 2013). If established, the prima facie case creates a rebuttable presumption of unlawful discrimination. Weil, 922 F.3d at 1002. The burden of production, but not persuasion, then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action. Id. (quoting McDonnell Douglas, 411 U.S. at 802); see Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000). Whether a defendant has met its burden involves "no credibility assessment" at this stage. Hittle v. City of Stockton, 2022

WL 616722, at *5 (E.D. Cal. Mar. 2, 2022) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)); If the defendant meets this burden, the presumption of discrimination disappears. *St. Mary's Honor Ctr.,* 509 U.S. at 507; Plaintiff must then produce "sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). In employment discrimination cases, the plaintiff "need produce very little evidence to overcome an employer's motion for summary judgment . . . because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Chuang,* 225 F.3d at 1124.

Here Plaintiff has established a prima facie case of retaliation. First, Plaintiff engaged in protected activity when she requested religious exemptions to the mandate. Free Exercise of Religion being a protected activity under Title VII, *Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000);* as is a complaint regarding a new policy. *Day,* at 1176 ("filing an administrative complaint or grievance" and "making informal complaints to supervisors" are protected activities). Second, Plaintiff suffered an adverse employment action as she was terminated after voicing her desire for exemption.

*Little v. Windermere Relocation, Inc., 301 F.3d 958, 970 (9th Cir. 2002*)

("[O]of course, termination of employment is an adverse employment

action[.]"). Finally, Plaintiff argues that the casual link between the

protected activity and the adverse employment action is "unusually

clear.". The Ninth Circuit held "causation may be established based on

the timing of the relevant actions." *Passantino* at 507. "Specifically, when

adverse employment decisions are taken within a reasonable period of

time after complaints of discrimination have been made, retaliatory intent

may be inferred.*" Id.:* see also *Yartzoff v. Thomas, 809 F.2d 1371, 1376*

*(9th Cir. 1987)* ("This inference of a causal link is strengthened by the

closeness in time between particular events."). "It is easier to find a causal

connection when the alleged adverse employment action closely follows

the protected conduct." *Adetuyi v. City & County of San Francisco, 63 F.*

*Supp. 3d 1073, 1089 (N.D. Cal. 2014).* Plaintiff's protected activity was

the but-for cause of termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,*

*570 U.S. 338, 360 (2013)* ("Title VII retaliation claims must be proved

according to traditional principles of but-for causation . . . ."). Defendant's

allegedly unlawful retaliation would not have occurred without Plaintiff's

protected activity. *Id.* This Plaintiff would still be happily employed at

Raytheon, but for the enforcement of the vaccine mandate. Moreover, the

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 8

Ninth Circuit has held that "evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Passantino*, 212 F.3d at 507. Plaintiff requests that the Court look at the events through the lens of reality, not conjecture, and see the chain of events for what they truly were, a loyalty test that had very little to do with public health.

III. **WRONGFUL TERMINATION IN VIOLATION OF 42 U.S. CODE §§2000e–2(a)(1) HAS BEEN MET**

Plaintiff claims wrongful termination in violation of Title VII. The Court has held that "there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 748 (9th Cir. 2011)* (quoting *Silo v. CHW Med. Found., 45 P.3d 1162, 1166 (Cal. 2002)*). There must also be a nexus between the public policy and an employee's termination." *Lucent Techs., Inc., 642 F.3d at 749*.

The Supreme Court defined "tangible employment action" in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742. 761 (1998), stating, "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 9

with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ., 133 S. Ct. 2434, 2443 (2013)* Here not only did the Defendant fail to prevent harassing behavior, but they also went out of their way to engage in said behavior, by delineating two distinct cohorts: the vaccinated and the unvaccinated and made membership in one group (vaccinated) the preferred group, while then un-vaccinated were treated as "the unclean".

Here, Plaintiff was terminated for refusal to betray her strongly held religious beliefs and inject an experimental vaccination derived from aborted fetal tissue that may have had harmful effects on her health. Rare link between coronavirus vaccines and Long Covid–like illness starts to gain acceptance | Science | AAAS

# In contention

At least six COVID-19 vaccine candidates use cells from fetuses aborted decades ago.

| DEVELOPER | VACCINE TYPE | FETAL CELLS USED | HUMAN TRIALS | POTENTIAL U.S. FUNDING | WARP SPEED PICK |
|---|---|---|---|---|---|
| CanSino Biologics, Inc./Beijing Institute of Biotechnology | Replication-deficient adenovirus | HEK-293 | Yes (phase II) | No | No |
| University of Oxford/ AstraZeneca | Replication-deficient adenovirus | HEK-293 | Yes (phase II/III) | $1.2 billion | Yes (short list) |
| Janssen Research & Development USA | Replication-deficient adenovirus | PER.C6 | No | $456 million | Yes (short list) |
| University of Pittsburgh | Protein subunit | HEK-293 | No | No | No |
| ImmunityBio/ NantKwest | Replication-deficient adenovirus | HEK-293 or derivative E.C7 | No | No | Yes (long list) |
| altimmune | Replication-deficient adenovirus | PER.C6 | Expected this month | No | No |

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 11

**CDC Working Case Definitions**

| Acute Myocarditis | | Acute Pericarditis |
|---|---|---|
| **Probable Case** | **Confirmed Case** | **Probable Case** |
| • Presence of ≥ 1 new or worsening of the following clinical symptoms<br>  • chest pain/ pressure/ discomfort<br>  • dyspnea/shortness of breath<br>  • palpitations<br>  • syncope<br>• AND ≥ 1 new finding of<br>  • elevated troponin above upper limit of normal<br>  • abnormal ECG or rhythm monitoring findings consistent with myocarditis*<br>  • abnormal cardiac function or wall motion abnormalities on echocardiogram<br>  • cardiac MRI findings consistent with myocarditis †<br>• AND no other identifiable cause of the symptoms and findings | • Presence of ≥ 1 new or worsening of the following clinical symptoms<br>  • chest pain/ pressure/ discomfort<br>  • dyspnea/shortness of breath<br>  • palpitations<br>  • syncope<br>• AND<br>  • histopathologic confirmation of myocarditis ‡<br>  • OR<br>  • elevated troponin above upper limit of normal AND cardiac MRI findings consistent with myocarditis†<br>• AND no other identifiable cause of the symptoms and findings | • Presence of ≥ 2 new or worsening of the following clinical symptoms<br>  • acute chest pain (typically described as pain made worse by lying down, deep inspiration, cough, and relieved by sitting up or leaning forward, although other types of chest pain may occur) §<br>  • pericarditis rub on exam<br>  • new ST-elevation or PR-depression on ECG<br>  • new or worsening pericardial effusion on echocardiogram or MRI<br>• Autopsy cases may be classified as pericarditis on basis of meeting histopathologic criteria of the pericardium |

## IV.   THE ROAD TO HELL IS PAVED WITH GOOD INTENTIONS

When granting relief to Plaintiffs in *Missouri v. Biden*, (W.D. La. 2023 at 154), The Court found that "Plaintiffs are likely to succeed on the merits in establishing that the Government has used its power to silence the opposition. Opposition to Covid 19 vaccines; opposition to Covid19 masking and lockdowns; opposition to the lab-leak theory of Covid 19; ……and opposition to policies of the government officials in power. All were suppressed." The Court elaborated, stating that "During the pandemic, a period perhaps best characterized by widespread doubt

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 12

and uncertainty, the United States Government seems to have assumed a role similar to an Orwellian "Ministry of Truth." *Ibid* at 154.

Not to be outdone by the governmental/media collusion, the regulatory agencies decided to have their own "glory day in the hot sun", The CDC engaged in an unscheduled medical coding update (ICM 4/20/20-PIC Code created), aggregating Pneumonia, Influenza and Covid, thus inflating morbidity and mortality statistics and allowing for seasonal flu to "disappear" Voluntary Recall of Three Detect Covid-19 Test Lots | FDA Mesa Biotech, Inc., Recalls Certain Accula SARS-CoV-2 Tests for Risk of False Positives Caused by Contamination | FDA North American Diagnostics Recalls Oral Rapid SARS-CoV-2 Rapid Antigen Test Kits That Are Not Authorized, Cleared, or Approved by the FDA | FDAJiangsu Well Biotech Co., Ltd. Recalls COVID-19 Ag Rapid Test Devices That Are Not Authorized, Cleared, or Approved by the FDA | FDA      American Contract Systems Recalls COVID Test Kits Nonsterile and Clean Catch Urine Kits for Risk of False Results | FDA  Woodside Acquisitions Inc. Recalls Oral Rapid SARS-CoV-2 Antigen Rapid Test Kits and Joysbio SARS-CoV-2 Antigen Rapid Test Kits (Colloidal Gold) That Are Not Authorized, Cleared, or Approved by the FDA | FDA FDA revokes authorization for SARS-CoV-2 test no longer in use | AHA

NewsFeatured Review: Physical interventions to interrupt or reduce the spread of respiratory viruses | Cochrane

## Table 5: COVID-19 Treatment Diagnosis Codes

| Common Patient Diagnosis | Prior to April 1, 2020 | After April 1, 2020 |
|---|---|---|
| Pneumonia | J12.89, B97.29 | U07.1, J12.89 |
| Lower respiratory infection/acute respiratory infection | J22, B97.29 | U07.1, J22 |
| Respiratory infection | J98.8, B97.29 | U07.1, J98.8 |
| Acute respiratory distress syndrome | J80, B97.29 | U07.1, J80 |
| Acute bronchitis | J20.8, B97.29 | U07.1, J20.8 |
| Bronchitis not otherwise specified | J40, B97.29 | U07.1, J40 |

It also allowed for PCR Tests, never designed to diagnose viruses, to be "over-magnified" above recommended cycle thresholds, CDC: maximum 28 CT for post-vaccine COVID PCR tests - The Sentinel (sentinelksmo.org) Ct_Fact_Sheet.pdf (tn.gov), to allow for "positive" tests, adding to "case count calculators, for a "scary" effect on nightly news. CNN staffer tells Project Veritas network played up COVID-19 death toll for ratings (nypost.com). Hospitals were incentivized with a 20% bonus for every patient with a Covid diagnosis, money deeply needed after all elective procedures were cancelled, Fact check: Medicare

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 14

pays hospitals more money for COVID-19 patients (usatoday.com).

Clinicians were allowed to diagnose Covid based in personal history/self-reporting sans any type of lab testing.



Instructions for reporting Cause of Death were changed. Vital Statistics Reference Guidance Number 03, February 2023 (cdc.gov), and very best part was there existed a single group that could be blamed for this rash of death and destruction sweeping across the fruited plains: The Un-Vaccinated. President Joe Biden has a message for unvaccinated Americans | CNN Politics, The unvaccinated are 'looking at a winter of severe illness and death': White House - ABC News (go.com), (26) Matt Orfalea on Twitter: ""NOBODY IS SAFE!" #COVID19

https://t.co/GeRfWm8jce" / Twitter



**CONCLUSION**

The vaccine did not prevent transmission and the risk was the same for vaccinated and non-vaccinated yet only non-vaccinated were fired for refusing a medical treatment that had nothing to do with workplace safety. Plaintiff worked from home, was never in the workplace and posed absolutely no risk to anyone. The hardship to the Employer was zero,  and above all, the Executive Order had already been stayed by injunction and new instructions were given by the Office of Federal Contractors to abandon language related to vaccine mandates. But

for the unlawful, discriminatory, and retaliatory actions of Defendant,

Plaintiff would still be a loyal employee of Defendant until her retirement.

Instead, Defendant terminated her service as a slap in the face for her

refusal to violate her religious beliefs. There is nothing demonstrated by

public health studies, written in medical journals or otherwise, that would

support forcing a remote worker, who has never even been to the main

facility to undergo an unwanted medical procedure that can never be

undone.



Respectfully Submitted:

*Nancy Knox Bierman*                                    /s// *Jennifer M. Vasquez*

Nancy Knox Bierman (PHV)                     Jennifer M. Vasquez Local Counsel

204 Munford, Houston TX 77006                Fla. Bar No. 71942 P.O. Box 2369

SBOT 24059177                                        Lakeland, FL 33806 Tel: (863) 686-0043

Libralawtexas@gmail.com                         Fax: (863) 616-1445

(713) 836-9990                                         j.vasquez@cttalaw.com

PLAINTIFF'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS - 17